All right. Mr. Kaplan, whenever you're ready, sir. Roger Kaplan for Appellants. Your Honors, I've reserved three minutes of time for rebuttal. May it please the Court, in CompuCredit Corp. v. Greenwood, the United States Supreme Court noted that it is, quote, utterly commonplace for legislators or regulators to preserve civil causes of action by including words such as sue, lawsuit, court of competent jurisdiction, and that in no way implies that that doesn't permit arbitration or that requires a judicial forum. In fact, in that case, there was a waiver that was attached to a contract, and it required the non-waiver provision said that you have a right to pursue a claim in court, the court held, that does not require a judicial forum. In this case, in Holmes v. Coverall, the Maryland Court of Appeals, looking at this statute, or essentially the prior incarnation, which used similar language, held that the use of language in Section 365B of the Maryland Code, which at that time was the Franchise Act, the use of words of sue in a court of law of equity or a court may do this or that, in no way implies that you in order to assert a cause of action under the Maryland Franchise Act or the Maryland Franchise Law. In essence, the court held that there is no hostility towards arbitration under the Franchise Act, that those words of court, lawsuit, sue, in no way implies that you are entitled to a judicial forum. The court in Holmes held that arbitrators are in as good a position as judicial courts to enforce the Act, and that under Section 365B, we find that it is not inconsistent with enforcement of a valid arbitration agreement. Now in this case, we're talking about a Maryland Code section adopted under that very provision of a Maryland regulation adopted under that very provision, which we've referred to as the Anti-Waiver Regulation. And that Anti-Waiver Regulation says that the franchisee cannot waive its right to bring a lawsuit for a cause of action under the Maryland Franchise Law in a court of competent jurisdiction in Maryland. Now, that language, under the teaching of either CompuCredit or Holmes, does not require a judicial forum. It doesn't require it. It doesn't give the franchisee a right to it. Well, all it does is it preserves the cause of action to be asserted in whatever forum, either arbitral or judicial forum, is appropriate. And in fact, the district court at page 28 and 29 of its opinion below recognized this because the district court held that this regulation did not prohibit or did not prevent arbitration clauses. In fact, the district court held that it did not prevent compulsory arbitration clauses. And if I can quote one sentence from the opinion, concluding that the Anti-Waiver Regulation prohibits compelled waiver of the right to bring a court action specifically rather than simply prohibiting compelled waiver of the broader right to pursue litigation or arbitration, meaning to assert the claim, would contradict the purpose of the statute, which was to complement rather than to supplement existing laws such as the Maryland Arbitration Act. So what you're left with is you're left with the construction of the Anti-Waiver Regulation, which does not require a judicial forum. It is there to preserve the ability to assert a claim, but it is neither consistent nor inconsistent with an arbitration provision and does not give the franchisee a, quote, choice whether to pursue arbitration or litigation. So now we have that provision, and it's now been incorporated virtually word for word in Section 29.2, Subsection 4 of the Franchise Agreement. And it uses the exact same language. It says, the provisions of this agreement shall not require you to waive your right to file a lawsuit alleging a cause of action arising under the Maryland Franchise Law in any court of competent jurisdiction. The same the appellees are suggesting, don't consider the fact that this clause is incorporating a regulation. And you don't have to rely upon the language itself, but if you look at Section 29.1 of the Franchise Agreement, it says that the subsections of 29.2 are incorporated laws. They are incorporated as laws of Maryland. If you look at the beginning section of 29.2, it says that the provisions of Subsection 29.2 are incorporated pursuant to the laws of Maryland, the Maryland Franchise Law and the Maryland Franchise Regulations. So what you're left with within the four corners of this agreement, because nobody has submitted any external evidence to throw light on the agreement, what you're left with is you are left with 29.24, which is virtually identical to the Anti-Waiver Regulation, which the highest court in Maryland, as well as this court has held, is not inconsistent with arbitration, does not require arbitration. And you have other provisions in the agreement that specifically say this is incorporated because it is a regulation in Maryland. So what you're left with is you're left with a construction of this clause, that this clause is included solely to preserve a cause of action under the Maryland Franchise Law, that you cannot require a franchisee to waive a cause of action. But it is not there to require or to suggest that you're entitled to a judicial forum. Now, I would also suggest... We've got competing constructions here, and the district court decided, in its wisdom, that this was sufficiently unclear for us to require further litigation. And let me address that point, Your Honor, because under Section 4 of the FAA, which establishes a summary procedure, you go to court and the court looks at the record before it. Has there been any extrinsic evidence submitted? The court applies a summary judgment standard at that moment. And is there a disputed issue of fact? Is there a disputed issue of fact that must be resolved by a trial? There is no disputed issue of fact in this case. And the courts in Maryland, which we've cited in our brief, have also said that even though an agreement may not be crystal clear on the face of the agreement, if there's no extrinsic evidence being submitted, then the court's job is to construe the contract as a matter of law within its four corners and come to the conclusion that, given the law and given the language in the agreement, the court believes is the best interpretation of that agreement. Frankly, Your Honor, when I received the court's order requiring a trial, my first question was, what are we going to try? Because nobody submitted any extrinsic evidence. The purpose of a trial is to resolve disputed evidence, to resolve disputed testimony. There was no disputed evidence or testimony to resolve. What the court should have done is said, if the court felt that the language was not crystal clear, I have to construe this language. What is the best construction in light of where the provision comes from? It clearly comes from the regulations. What is the meaning of the regulations? Was the intent on the face of the agreement to incorporate that regulation into the agreement? Clearly it was, if you look at sections 29.1 and 29.2. But look, I don't know what the trial would look like, Your Honor, because we submitted evidence to the agreement and we would rest. Even if that's right, even if you're a little perplexed by that, isn't it correct that the district court hasn't fully and finally resolved this question of whether there exists an arbitration agreement? And is amicus counsel correct when it says that because that hasn't been finally decided, this appeal is not properly before us? No, Your Honor. And the cases, and it happens to be one issue we agree with the appellees on, is the cases are so crystal clear under the 1988 amendment to the Federal Arbitration Act, which created this interlocutory appellate scheme, that they're relying on one unreported non-precedential case in 1998 in this court, which did not consider the legislative history, did not consider the fact that there was, in fact, an order. And every single decision by every court of appeal, including this court of appeals, since that unpublished decision, has squarely held that if you have an order entered denying arbitration, even if the district court contemplates that it's going to do something else in order to resolve that issue, appellate jurisdiction attaches. And I'd refer the court to its own decision in Chase versus, not in Chase, I'm sorry, in which this court held in 2002, the record unequivocally reflects that the district court entered an order denying the motion to compel under the plain language of section 16A1A-B of the FAA. This circumstance is all that is necessary to grant us appellate jurisdiction in this case. Well, you've been telling us why this and why that. Simply tell me how you would want this case to come out. Here's, Your Honor, and I appreciate the opportunity to respond to that question. I believe that this court should hold that the language in 29.2 subsection 4 does not guarantee a judicial forum, nor does it provide the franchisee with a choice to proceed to arbitration or not, because that choice imposed by the state is unconstitutional, as this court held in Saturn. So the court should hold that 29.2 subsection 4 does not in any way take away from the arbitration clause. That's my first level of analysis. Bottom line, you want to arbitrate this case? Absolutely. The second level... Well, let's suppose we agree with you. Do you agree that in the first instance, whether or not there has been waiver of the arbitration for failure to mediate, that decision should be made by the arbitrator and not the court? I agree with that provision, and frankly, Your Honor, I don't believe that there has been any waiver to arbitrate, because both sides recognize, either in their complaints or in our arbitration, that mediation... They don't focus on mediation. There are two paragraphs in their complaints to give background, but they haven't suggested in their complaint that the arbitration demand is inappropriate because there wasn't mediation. If you look at their causes of action, they don't assert that. They don't assert that in their prayer for relief. It has nothing to do with the mediation, and they don't assert that in their motion for a preliminary injunction. If they wanted to enforce the mediation clause, they could have asked the judge to do that. Go mediate before you arbitrate, but I agree with Your Honor that if there is arbitration, then the issue of whether the parties should mediate before they arbitrate is an issue for the arbitrator. And Your Honor, may I proceed further, because the first level of our analysis is there is no clause that in any way affects the arbitration clause. The second level of analysis is that if this court finds that Section 29.2, subsection 4, does in some way negate the arbitration clause, or does in some way say, well, now the franchisee must be given a choice whether they want to arbitrate or litigate. That clause is preempted, and the argument is, well, it's in the agreement. How could it be preempted? Well, the cases in this district and the cases in the Court of Appeals in Maryland are squarely on point. And Judge Diaz, specifically in one of the cases that you were on in the AFSC, I think it was Epps v. J.P. Morgan case, that case collected the decisions, both in the Maryland Court of Appeals as well as in this court, that held, if a provision of state law or regulation is itself preempted, if that provision is now included in a contract, the preemption analysis turns on whether that provision was freely included in the contract, or whether it was required by the state or by government to be included in that contract. In this case, the evidence is clear, and it's uncontradicted, that the insertion of the subsections in 29.2 were required by the Commissioner of Securities of Maryland in order to gain approval to sell franchisees in the state. As a result, the leading case, both in Epps v. J.P. Morgan Chase and in Wells Fargo v. Neal, which is the Court of Appeals case in 2007, a preempted regulation, and clearly, if this regulation, I'm talking about the regulation, not the clause, if the regulation, the anti-waiver regulation requires, my time is up, may I finish the thought, Your Honor? Quickly. If the regulation requires either a judicial forum or that the franchisee be given a choice, that regulation is clearly preempted and clearly preempted under cases such as Saturn in this court. If now the regulator says, well, you have to include that preempted provision in your contract, that clause is preempted as well. It's unenforceable. It is, as in the words of this court, it is not an obligation that was freely assumed by my client, Dickey's, and it is unenforceable. It's as if the contract did not contain it. To rule otherwise, if I may, Your Honor, is to permit the states to circumvent the preemptive scope of the Federal Arbitration Act by establishing a regulation which as a regulation cannot be enforced, but then saying, but you have to include it in your contract and it would be a complete circumvention of the preemptive scope of the Federal Arbitration Act. Thank you. I have one more question. Yes. The extent of your arbitration, if you were to win on this appeal, would include the arbitration of the Maryland Franchise Claims. We say that it encompasses all claims, including the Maryland Franchise Claims. In the alternative, and we think because the anti-waiver regulation cannot be read to require a judicial forum. In the alternative, even if it did and even if our preemption argument is not accepted, clearly 29.24 would require a judicial forum only for affirmative causes of action under the franchise law, but does not affect our common law claims. Our common law claims should then proceed. And under Section 3 of the FAA, the FAA gives preeminence to arbitrable claims. Non-arbitrable claims should be stayed pending arbitration. And the courts have also specifically said, even if that means that some overlapping issues between the arbitration and the court case will be decided in arbitration conclusively, that's just the fact that Congress has favored that the arbitration goes first. Thank you. Thank you, Mr. Kaplan. Mr. Gasper. Good morning, may it please the court. My name is Russell Gasper representing the franchisees, Chorley and Truard. I hate to start off by this, but before you tell me why we should do something, tell me what you want the result to be. Judge Floyd, we would like the court to reverse the district court's finding that there was an ambiguity inherent in the franchise agreement and the development agreement that made it impossible to choose basically the priorities between the arbitration clause and the protection of the right to file a lawsuit in Maryland to assert franchise act claims. We believe that the proper decision is that this court should conclude that the ambiguity doesn't exist in the way that the district court found it and that the language of the franchise agreement properly construed meant and means that the franchisees have a right that they've exercised to file a lawsuit in a court of appropriate jurisdiction in Maryland to assert their franchise act claims and allow those claims to proceed to trial before the district court. Well, assume we do that, then you got parallel litigation going on.  And it seems to me both sides are wasting a heck of a lot of money to litigate this thing. Your Honor, I agree with you that there is a potential for parallel litigation, but I believe that it is also within the district court's determination, its discretion to conclude that the common law claims arbitrable in Texas are one of two things, either they're compulsory counterclaims to the Maryland litigation, which must be asserted in the Maryland litigation or be waived, or secondarily, that those claims, if not compulsory counterclaims, should be stayed because the fundamental issue, the fundamental relief sought by the Maryland litigation is basically voiding the franchise agreement due to unlawful and improper representations in the franchise disclosure document. Seems to me you're making a good argument for why there's such a strong federal policy in favor of arbitration to avoid this sort of quagmire of litigation that sounds to me like you're seeking. Judge Thacker, I recognize that in an ideal world, every case would be neatly and cleanly decided in only one forum, but we're faced with contracts drafted by Dickies, voluntarily agreed by Dickies, presented to the franchisees as part of the franchise disclosure document that say that Dickies' right to pursue one kind of claim, the Franchise Act claim, is protected to be asserted in a lawsuit in Maryland. Mr. Kaplan's argument that the phrase, and this is from Article 29.2.4, your right to file a lawsuit alleging a cause of action arising under the Maryland franchise law in any court of competent jurisdiction in the state of Maryland really means arbitration, flies in the face of the plain meaning of those words, and is not a result compelled by the Holmes decision. He reads Holmes for much more than what Holmes says. Holmes was very simply a case where there was only an arbitration agreement in the franchise agreement. The franchisee attempted to avoid the arbitration clause by saying it was contrary to the public policies inherent in the Franchise Act, and the Maryland Court of Appeals disagreed. It didn't parse language relating to court and suit and claim. It said no, the policies stated in the Maryland Franchise Act are not hostile to arbitration, as they must be if this act is to trump the arbitration clause, and secondarily, the provision of the law that said that its remedies are supplemental to, not replacing, other existing remedies means that the Maryland Franchise Law, which was in effect prior to the Franchise Act, has continued vitality, and that the Franchise Act recognizes its continued vitality. Therefore, Franchise Act claims can be arbitrated. It's not improperly a requirement. It's not inconsistent with the law, but they need not be. And that's why Holmes doesn't control the outcome here. What controls the outcome here is what the parties agreed to in the Franchise Agreement and the Development Agreement, and that language very clearly indicates that the state-specific provisions in Article 29 of the Franchise Agreement and in Article 15d of the Development Agreement trump the arbitration clause. You say by inclusion of that language in the contract that essentially Dickey should be estopped from seeking arbitration. We haven't framed our argument as an estoppel argument. We believe that it's more a contract interpretation argument than an estoppel argument, but I think there's a basis for that kind of analysis. Dickey's wrote this agreement. Dickey's presented it in one form. This was not a bargained-for contract where the parties exchanged drafts. This was a document attached to the Franchise Disclosure Document, and if you wanted to be a franchisee, you signed it. Dickey's chose the words that were in it and chose the words in Article 29.2-.4 that said that the franchisee could not be compelled to waive its right to file a lawsuit, not a claim, a lawsuit in a court of competent jurisdiction in the state of Maryland, not any tribunal or forum. Can you distinguish compu-credit, which is probably the other side's best case? Your Honor, I apologize. I probably can't give you enough of a distinguishing analysis maybe to respond to your question. I think compu-credit, though, presents a different kind of situation. What we're trying to enforce here is contractual language. We are not appealing the district court's decision that narrowed the scope of the Maryland anti-waiver regulation. What we're saying is that the contractual language that Dickey's included in the agreement is given by the express language of the contract priority. It's given preference. The language of both contracts makes clear that the state-specific provisions are intended to modify other conflicting or inconsistent provisions. It says in 29.4 that notwithstanding any other contrary provision, 29.2 governs. The internal structure of the language, the internal structure document points in only one direction and resolves the ambiguity that the district court found. The district court said, I can't find anything in the documents that allow me to choose between the two. And we submit that that was wrong. That the answer to that question, what allows me to choose between the two, is the express language of 29.2 and the express language of 15C, I believe, and addendum D, which points you to the language of those clauses as the controlling language for this question. Therefore, we believe that the ambiguity that the district court found is resolvable by reference to the plain, ordinary language of the agreement as a matter of straightforward statutory construction. And that statutory construction controls independent of whatever the district court may have regulation. Going back for just a moment to my point about Holmes, the district court specifically found, concluded, and it's at page 33 of his opinion, joint appendix page 33, that the interpretation that we are arguing to the court was consistent with the Maryland Franchise Act as interpreted by Holmes. So Mr. Kaplan's argument that somehow what we're arguing for is not supported by the Maryland Franchise Act or is contrary to Holmes is not correct. We think that the district court decided that question correctly. Does the implementation of that regulation after Holmes change anything? Your Honor, I don't know that it does. I think it may be fair to argue that the Maryland Division of Securities adopted the regulation because it wasn't entirely happy with the Holmes decision and wanted to preserve some right for a franchisee to sue in a Maryland court. The district court found that that decision, assuming it was made that way, exceeded the security division's statutory authority. It's a fairly straightforward administrative law question. Is the regulation consistent with the limitations imposed by the statute? The court said no. But here we've got a different question. This is not the franchisees coming in and saying the arbitration clause should be struck down because of the regulation. This is the franchisees coming in to say the arbitration clause fails. The arbitration clause must fall in light of the specific superseding language of Article 29 and Article 15D and Addendum D. So I think that's a very important distinction that Mr. Kaplan's argument tried to blur, but I don't think it possibly can be blurred given the language of the documents and giving a proper reading of the Holmes case. I wanted to touch briefly before my time is up on the question of preemption and whether Saturn controls this case. We respectfully submit that Saturn does not for a couple of important reasons. Saturn involved a Virginia statute that basically prescribed specific language that must be included in a franchise agreement that, properly read, eliminated the arbitration right entirely as to all claims for all purposes. We don't have a statutory provision in Maryland that requires the inclusion of any statutory language, nor does anything in the Maryland regulations require any particular contractual language. There is no command that flows from the legislature in the Maryland Franchise Act or the Maryland administrative authorities in the Comar regulations. To try to get around that, we have the, I believe his name is Mr. Heyer, Mr. Heyer's affidavit. And he says two things. He really doesn't provide any facts, and this is the important point about the preemption argument. If you look at paragraphs two and three of his affidavit at Appendix 1553, he says, Maryland law and the Commissioner of Securities required Dickey's to include Article 29, and specifically Article 29 too in its subsections in the franchise agreement as a condition to Dickey's registration in the state of Maryland. That's conclusory. First, he's wrong, blatantly wrong when he says Maryland law required it. Maryland law doesn't require the inclusion of any language in the franchise agreement or the development agreement. The second half, the Commissioner of Securities required it. What does that mean? Does that mean that Mr. Heyer thought that that's what the Commissioner of Securities wanted? Does it mean that somebody told him that that's what the Commissioner of Securities wanted? It's at least potentially hearsay. They try to characterize it as an instruction or a command. If they had had more definitive evidence on that point, an affidavit from somebody in the Securities Commissioner's office purporting to give that command, would we have a different case? Your Honor, potentially we would. Potentially, that would bring it within the scope of Saturn. But here's the mystery about this declaration. Dickey's would have that information. I mean, if Mr. Heyer did what he said he did, which was to represent Dickey's before the Commissioner of Securities, and if in fact the Commissioner of Securities issued a command, you must include this language, Mr. Heyer would have been perfectly capable of saying much more than he did. He could have said in a letter dated, copy of which attached as Exhibit A, in an email dated, copy of which attached as Exhibit B, in a telephone conversation with so-and-so at the Commissioner's office, I was told that. Or they provided me with this language. Or they gave me a copy of model language that they wanted me to include as a condition of registration. He doesn't say any of that. And the law is very clear that the inference has to be, because of his failure to say this, that there is no such evidence. Or that if it existed, it would be contrary to the position asserted. I'm out of time. Thank you. I probably should have come prepared with a schematic flow chart to figure out the line of argument in this case. But Mr. Crockett, we're going to go with you. Thank you, Judge. Good morning, Your Honors. Please, the Court. My name is Jim Crockett. And I'm a fellow you all appointed to be amicus counsel to support the district court's opinion. Can you all hear me? I can't tell if this is working or not. Somebody apparently sabotaged the mic there. Did a great job. You know, there's an issue that we raised that you didn't even ask us about. I want to get to that. But I think it's probably easier if I first just address the issue you did ask us about, which is, did the district court get it right as to whether there was an ambiguity in this contract that had to be resolved? It's a simple matter of fact. I think everybody agrees on a few things. One, everybody, including Judge Grimm, agreed that the arbitration clause standing alone, there's nothing ambiguous about that at all. There also is, I know it was mentioned in Mr. Kaplan's argument, that this is a bit, this is a summary judgment style proceeding. The court has to make a decision, and on, not on whether there's a contract in general, just one simple issue the court has to resolve. Did these parties agree to arbitrate? Because why? There's a strong policy, as Judge Thacker said, in favor of arbitration. There is no policy favoring pushing people to arbitration when they didn't agree to do so. There's one issue. Did you agree to arbitrate this case? And that is decided on a summary judgment basis. Judge Grimm, at the end of the day, came down with a very simple proposition, that while there's no question about what the arbitration clause means, this other clause that keeps creeping up, the anti-waiver clause, as we call it, which looks like the anti-waiver regulation, he wasn't ruling on the anti-waiver regulation. We all, the parties agree how he interpreted that regulation. But now there's a provision in a clause that apparently the parties put in this contract, and this one says you can't be required to give up rights that are described there. And the judge hung up on this simple proposition. Is the very unambiguous arbitration clause requiring you to give up this right and therefore barred by this provision? Or are you saying, yes, we're not required to do it, but by golly, we want to do it anyway, and here's the provision in the contract. There's really no way to resolve that conflict. There's a conflict there on its face. So what is a jury trial going to look like? Well, that's a good question. And we never got there. Because let me just, in answering that, let me say what the judge said he was going to Because there was some, there was some reference in the brief I got yesterday that said, or the night before last, that the judge wanted, there was going to be a lengthy trial of some sort. And lots and lots of discovery. And that's not really what the court did. The court said, first thing he did was he said, I've got this ambiguity, and I've got to resolve it. And the statute does have a two-part test. You know, you do the first one. If you can't resolve it without evidence, you go on to this here. If you can't resolve it based on what was put in front of you, and it's a summary proceeding, you go expeditiously to it, I'm sure. But the court asked counsel to confer and propose jointly a pretrial schedule addressing any discovery that must be conducted. It was up to them to tell the judge if any discovery was going to be needed. So was there going to be a lot of discovery? That was not contemplated. It's entirely up to them. I would assume, if I was the judge asking, you know, faced with this, I'd want someone in a witness stand telling me what they meant when they wrote this. That would be the first way I'd try to resolve this. What did you mean? Because it's a knot that you can't break using just logic. It's not that you could. One way you could resolve it, and it's been mentioned, is that you could just say, well, it looks and smells like the arbitration regulation, so let's just treat it like that. But the arbitration regulation also says you can't be required to do this. So it really doesn't go away when you look at the arbitration provision. This is one of those positions, one of those situations, that I'm sure courts just love getting, where they get a contract written by really strong legal talent, and it comes in and it doesn't. On the very issue that's put before you, it doesn't work. And you're put in the position of having to do it. And you're put in the position of doing this under a statutory procedure with a summary judgment standard. Can a court decide as a matter of law, without a jury, that the contract is ambiguous? As a matter of law? Yes. You know, I've never thought about that. It seems to me that's a factual determination of ambiguity. I mean, what constitutes an ambiguity is a legal standard, I suppose. But I think it eventually comes down to the facts of what's on this piece of paper. I don't think there's a, you know, as I understand it, that the rules of contract and of construction begin with, you know, really the clear language. And they end down here with construing it against the drafter. But in the middle, there are all sorts of rules that you use to try to break the knot before you get down to construing it against the drafter. But that's the last thing you do. So I would think before you did that as a matter of law, here, I think you'd want to have more evidence. I think, I know Judge Grimm wanted to have more evidence on what the people who wrote this meant to do. Because he couldn't figure it out on the face of it. On that simple point of whether that required to waive is supposed to do away with this clear arbitration clause or whether the clear arbitration clause was a waiver that was not required but entered voluntarily on the part of all the parties in this case. That was the simple point. I don't know if that addressed your question, sir. Well, I mean, I don't, I think you're probably right that ambiguity is probably a question of fact. But really, what evidence can be offered? You got two clauses, and they're diametrically different. We will never know the answer to that question today because nobody did what Judge Grimm asked him to do, which is get back to me and tell me what discovery you need. But is it a question of ambiguity or one of interpretation? And if the latter, then it was for Judge Grimm to figure out. Right, but I don't believe he could, as a matter of interpretation, he could break the knot. I mean, unless you, unless, now there are tools available and I wasn't, these are the parties' arguments, so I hesitate to get into them and to take sides. But for example, without taking sides, one would be to say, well, we're going to construe it in pari passu with this regulation and all the jurisprudence around that, which would lead you to believe maybe you can, you know, it's okay to have an arbitration clause and nothing in this provision affects that. I mean, that's a possible way to do it. But they also have other provisions, you know, that say like the venue, you know, the venue part of it, which is in this development agreement, actually says that, you know, if you have a venue that doesn't talk about being forced to take a venue in a form, that one says, you know, if you have any agreement which designates a jurisdiction or venue outside of the state of Maryland, that sucker's void. So, you know, so there you've got part of this agreement, you know, about what's going to happen with this arbitration that, you know, isn't. So in the eyes of at least the trial court base. I believe that Maryland law says that courts can resolve ambiguities in a contract if there's no, if there is no factual dispute in evidence. Well, but isn't, Judge, isn't, well, there's a, to me, there's a factual dispute here and it's right on the face of the contract. The contract itself is a form of evidence and it says A and it says B and the two aren't consistent. There's also the idea of, you know, of the party's intent. And I don't, I heard today there was no negotiation. I don't know, you know, if it was made clear to Judge Grimm that there was absolutely no evidence about the party's intent that they could give him, that perhaps would have been something I would have done if I was asked by a court to confer and get back to him on the discovery needed. I think I would have gone back and said, Judge, we can't help you a bit. Can't get you out of this when you've got to do it. And then I don't know what Judge Grimm would have done in that circumstance. But I believe at least he thought that the process, he couldn't figure it out on the face of it. This statute, which is very clear, says you go on to the summary proceeding, that that's what he should have done. And that's what he intended to do. And I don't think there's any evidence he was trying to delay it or do anything different or repel discovery or anything like that. He just said, you get back to me and tell me what discovery is needed before we have this summary proceeding. That's what the man did in this case. And that kind of, that kind of gets me to the jurisdictional point, if I may. What Judge Grimm also did in that same paragraph, it's right at the end of the opinion. He said, the consent order not to proceed further with arbitration remains in effect. There's a consent order out there somewhere that says we're going to not arbitrate, we're going to withhold that. And that remained in effect. And after that, he goes, he says, until the aforementioned ambiguity clause is resolved. And then he goes, the motions for preliminary injunction and the motion to compel arbitration are denied without prejudice to be resubmitted on request depending the outcome of the jury trial to resolve the ambiguity in the agreements. Position that I raised with the court about whether this was a proper appeal before this process finished. I understand quite well that the statute says that you can take an appeal from an order of the court, you know, denying the injunctions and refusing to compel the arbitration. But the question is, when does that point of, when the court makes that ruling, does it happen in midstream or does it happen at the end of this proceeding which Congress spelled out rather painfully clear in section four? So do you think Snowden was incorrectly decided? No, I don't think Snowden's on point, Judge. And I don't, you know, here's a shocker. I don't think any of the cases they cited were on point because none of them had a court that had made the first decision under section four, you know, is there an agreement to arbitrate, can't do it. Going to have summary proceeding, there is not. Well, Snowden was a case where the judge said can't do it. He just decided he wasn't going to proceed summarily, but was going to decide it as part of the larger issues in the case. Exactly, exactly. But why does it matter? Exactly, he's going to decide it within the larger issues of the case. But why is that legally significant? Because in this, because in this case, you have a statute of Congress that says we're, that's probably how it got broken. You have a statute. I'm going to take that away from your feet. You have a statute enacted by Congress that has a proceeding in it, and the decision comes out at the very end of it. It can come out in the middle if there's no dispute, but it comes out at this end point at the end. And that's the decision under that statute. And if you, you're not in that statutorily constrained procedures under section four, if you're looking at this in the context of all the other issues in the case, which specifically include issues you're not allowed to consider. For example, the scope of the arbitration agreement. I'm sure that's another issue in the case. But in Snowden, there was this class representative thing going on, and they wanted to make sure, well, we don't, you know, I can't decide that, but I'm going to decide it in the context of another issue over here, completely outside of section four, that would delay this for some period of time. So what he's done really in Snowden is the court has short-circuited the proceedings under section four. It's stopped midstream and is going on with non-section four types of proceedings. And that's exactly what happens in each and every one of the cases. I could stand up here a lot longer than seven and a half minutes and go through each and every one of those cases, but all of them have that sort of thing going on. The case that are most cited in the briefs, the, I'm sorry, I'm going to get the name of it here, Janiga, I may be mispronouncing that. That was one where the issue was not that the court stopped on this issue of did you agree to arbitrate, because he wanted to take on the big issue. Did you have a contract at all? He's outside of section four. He wants to have the ultimate issue of whether there's a contract at all, one specifically reserved for the arbitrator, I think, under everybody's view. And that one was the one that was based upon the fact that the party, the plaintiff who filed the lawsuit, who was trying to get out of arbitration, didn't speak English and hadn't read the contract. So he did wonder whether there was an agreement to arbitrate, but he wondered whether there was an agreement at all here because of the capacity of the party. And that's the same thing that happened in the Sandvik case. What would you have us do? Well, it's unfortunate, and I realize that there's nobody behind me that agrees with what I'm going to say, but what should have happened is is that Judge Grimm should have been allowed to finish the process under section four and make a decision under that entire provision that then, up or down, would be appealed to this court. That's what should have happened, in my opinion. And if that's the case, if I'm right, you don't have a choice. I mean, that's the burden you carry. You don't have jurisdiction. You don't have a choice. You have to send it back. And the only reason I hesitate is I don't want you to do that. I don't think you want to do that, but I think that's the only thing you can do if you agree. And I do encourage you, and there's no sense of me sitting up here beating on each one of the cases. Look at those cases. Not one of them involves a stopping in the middle of section four process to have the second half of that process. They're all going on to do bigger and better and more all-consuming processes in the case. And that can't be allowed, either, because people do have a right to appeal from that. So if you deny their motion for an injunction, or you deny their motion to compel arbitration, and you just put it on the side while you do the entire case, that doesn't comport with section 16. But if you require them to finish that one issue, before they take the appeal, and complete the process, I think you've harmonized both section 16 with section four, and it makes a lot more sense. Because like I put in my brief, you probably got one appellant and one appellee at that point in time. And you don't have to worry about me, either. So it's all for the court in a much better package. The benefit of hindsight. That's really all I had for you, unless you have any other questions. Thank you, Mr. Proctor. Thank you, sir. Gaspar, do you have some rebuttal? Your Honor, I think I was... Oh, I'm sorry, Mr. Kaplan. That affected the microphone. I plead guilty to that. The, let me start with jurisdiction. The problem is that if you require a final decision on arbitrability, you have read out of the statute, the first two sections, because the catch-all in A3 says, any final decision on arbitrability is appealable. Under section A, looking at the statute, under A1, A and B, is any order refusing a stay or any order failing to compel. And then if you drop down to A3, or a final decision with respect to arbitration, amicus says, you have to have a final decision, which essentially negates everything that comes before subsection three. What if Judge Grim, in this case, had simply not used the magic word to deny without prejudice? Well, then... Hold on, hold on. I'm just, I'm going to hold off. I'm going to defer on the decision and hear evidence on the terms of the contract. That we would not have had a right to appeal because in fact, in Geneva, the Seventh Circuit said that it, that the court should not have entered the order. It would, the court should have carried it and should not have entered the order, but they entered the order. We have jurisdiction. And in fact, the court went on to decide the issue as a matter of law. Now, the problem is, once you enter an order, our time to appeal now starts to run. And if you enter an order, and I wait more than 30 days, I've lost my right to appeal. So, and now, although the district court may have said, I'm going to do this quickly, what if I find myself a month or two or three down the road and we still haven't had a proceeding and I still haven't had a final decision? I've now lost the right to a summary proceeding and I've lost my right to appeal, which is the reason why this court held, once you enter an order, that's all you need. Because now my time to appeal starts to run. And in fact, Your Honor, in Kovaleski, in the Seventh Circuit, 1999, it wasn't discovery on whether there was an agreement in general. And I'll quote, the motion was denied without prejudice because the district court found, quote, the discovery sought by the plaintiff is appropriate before a decision can be reached on the arbitration issue. Mr. Kaplan, you might've lost the right to appeal the initial interim decision, but ultimately, Judge Grimm, in this case, it appears, was contemplating a final decision. But what happened in Geneva was they contemplated a final decision and then a year later, a year later, the judge said, well, I'm going to now decide and I still think I need to carry it, but I'm going to deny it without prejudice at that point. And he was still carrying the motion. At that point, the 10th Circuit said, you entered the order, we now have appellate jurisdiction. Your Honor, I think the case is, there's one case, 1998, unpublished, every single court of appeals decision since that 1998, 7th, 3rd, 10th, have all said, all you need is an order, an order, and your appellate rights affixed. May I address? Your time is up. Thank you, Your Honor. Mr. Gaskin. Thank you. On the jurisdictional issue, one of the things that the argument so far has not brought up is that there is a separate basis for appellate jurisdiction based on the stay decision under Article III of the FAA, which is separately appealable to this court. And independent of any problems that may or may not exist with respect to the Section 4 decision, the Section 3 decision regarding a stay also provides for appellate jurisdiction. And Dickey's invoked Section 3 in its jurisdictional statement. So I think while Mr. Kaplan and I are in agreement concerning the law applicable to Section 4 appeals, even if that is entirely wrong, there is jurisdiction with respect to the Section 3 stay decision. And therefore, I don't think there's any doubt that this court has appellate jurisdiction for this case. Judge Floyd, I'd like to do a little bit better about your question about CompuCredit. CompuCredit, I don't think, is really an issue on this appeal because CompuCredit was a case involving statutory interpretation. The language of the statute said, in effect, that a party shall not be required to waive any right under the applicable statute. We're really not dealing with that kind of statute in this appeal. I mean, to the extent that CompuCredit has perhaps some relevance, it may have some impact on the district court's decision about the anti-waiver regulation. But in terms of the contract interpretation question, it really isn't applicable to this decision, as Holmes is not applicable to this decision. With respect to the ambiguity issue, first, I'd say that ambiguity is under applicable precedent, very clearly a question of law for the court, whether there is an ambiguity. One of the cases among many that we've cited is this court's decision in Washington Metro Area Transit Authority versus Potomac Investment Properties, 467F3-231, a 2007 decision. But Maryland's substantive law of contract interpretation is the same. Questions of ambiguity are questions of law for the court. Obviously, they involve a review of the contract to determine what the contract says, but they're not fundamentally contract, fundamentally factual issues. And that brings me to Mr. Crockett's rhetorical question. What did you mean when you wrote this? That question becomes relevant only if the language of the agreement, given its plain and ordinary meaning, is susceptible of two different interpretations. That kind of extrinsic evidence only is admissible to clear up an ambiguity. And I think, for the reasons I've discussed earlier today, that the district court's conclusion that he was perplexed about which section gets precedence, gets priority, arbitration or the preservation of the right to sue on the Maryland Franchise Act in a Maryland court, is resolved by the language of the state-specific provisions that clearly indicate that the words Dickey's wrote meant that, without any doubt, that those provisions control over anything else. They supersede the arbitration clause and they contain an exception to the arbitration clause for claims asserted under the Maryland Franchise Act. The right is reserved to the franchisee to bring a lawsuit in a court of competent jurisdiction in Maryland. It's an exception to the arbitration clause, to the general rule of arbitration. And it entirely consistent with the basic rule of statutory construction that specific provisions govern over general. The arbitration clause is a general provision. The state-specific provisions are just that, specific provisions dealing with one unique aspect of disputes between the parties. Lastly, one final point concerning preemption. The Saturn decision was decided in 1990. It was on the books for more than 20 years before Dickey's went to Maryland to seek approval to sell franchises. Dickey's is presumed to know the law and it wasn't recent law. It was longstanding law in this circuit. Dickey's went to Maryland being charged with the knowledge that it couldn't be, or arguably couldn't be compelled to include language that foreclosed arbitration in the franchise agreement. But unlike Saturn, Dickey's didn't challenge the Maryland decision. Saturn immediately sued when it was instructed by the Virginia authorities to include the language that it disagreed with. And it sought a declaratory judgment that the Virginia authorities were acting in a manner that was inconsistent with the Federal Arbitration Act. Dickey's didn't do that. Are you saying that that is a precondition to making this argument with respect to preemption? Your Honor, I think it is for these reasons. Number one, it reflects acquiescence. Dickey's chose to accept the language assuming it was compelled. And I've already argued that it really wasn't compelled. There's no proof that it was compelled that is competent for this court or the district court to consider. But assuming that was the case, Dickey's acquiesced. It went forward, got its franchise documents approved and went out and sold. And essentially it's selling in a fundamentally fraudulent way. Even though I'm telling you in the franchise agreement, Dickey says, that you have a right to file a lawsuit in Maryland for your Maryland Franchise Act claims. I really don't mean that because Maryland made me do it. The purpose of the Franchise Act, among other things, is to prevent fraudulent conduct with the creation of franchise agreements. And that sort of fundamental inequitable and essentially fraudulent conduct I think gives rise to an estoppel here. All right, thank you, Mr. Kessler. Thank you very much. Thank you. Mr. Crockett, you've saved some time. Do you have anything more you want to say? I'm not encouraging you, but... All right. Now, there was a cross appeal on this case and it looks like there was some time reserved for that. Do they have any more time left? No, they're all done. Oh, good. Mr. Crockett, as I told Mr. Hicks, I want to thank you for taking this case on pursuant to court assignment. You did that with short notice and you gave us some additional things to think about in an already complicated case, but we appreciate your advocacy on behalf of the district court. I'm sure Judge Grimm would have been proud. So thank you very much. All right. The court has considered taking the matters under advisement and will stand adjourned. This honorable court stands adjourned. Sign and die. God save the United States and this honorable court.
judges: Albert Diaz, Henry F. Floyd, Stephanie D. Thacker